**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

　　　　　　*Plaintiff-Appellee,*

v.

DWIGHT JOSE MITCHELL, a/k/a
Marcus Jackson,

　　　　　　*Defendant-Appellant.*

No. 06-5169

Appeal from the United States District Court
for the District of South Carolina, at Greenville.
Henry F. Floyd, District Judge.
(6:05-cr-01167-HFF)

Argued: December 6, 2007

Decided: March 6, 2008

Before MICHAEL and KING, Circuit Judges,
and Catherine C. BLAKE, United States District Judge for the
District of Maryland, sitting by designation.

---

Reversed by published opinion. Judge Michael wrote the opinion, in
which Judge King and Judge Blake joined.

---

## COUNSEL

**ARGUED:** Thomas Edward Vanderbloemen, GALLIVAN, WHITE
& BOYD, P.A., Greenville, South Carolina, for Appellant. W. Walter
Wilkins, Assistant United States Attorney, OFFICE OF THE
UNITED STATES ATTORNEY, Greenville, South Carolina, for

Appellee. **ON BRIEF:** James Barlow Loggins, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greenville, South Carolina, for Appellant. Reginald I. Lloyd, United States Attorney, Columbia, South Carolina, for Appellee.

---

## OPINION

MICHAEL, Circuit Judge:

Dwight Jose Mitchell used a false driver's license and counterfeit checks in the name of Marcus Jackson to buy merchandise and return it for cash refunds. Section 1028A(a)(1) of Title 18 makes it a crime, called aggravated identity theft, to use a means of identification of another person (a specific person) in the commission of certain felonies, including bank fraud. Mitchell pled guilty to bank fraud, but he appeals his conviction, rendered in a bench trial, for aggravated identity theft. Although there are real persons named Marcus Jackson, Mitchell did not couple his use of that name with a sufficient amount of correct, distinguishing information to identify a specific Marcus Jackson, as required by the statute. We therefore reverse Mitchell's conviction for aggravated identity theft.

I.

Mitchell was charged in a three-count superseding indictment with bank fraud in violation of 18 U.S.C. § 1344 (count I), transporting counterfeit securities in interstate commerce in violation of 18 U.S.C. § 2314 (count II), and aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1) (count III). He pled guilty to count I and not guilty to count III; the government dismissed count II. Mitchell was tried by the court without a jury on count III's charge of aggravated identity theft. Count III alleged that on or about October 3, 2005, in the District of South Carolina Mitchell used, without lawful authority, a means of identification of another person. Specifically, this count alleged that Mitchell used a Georgia driver's license in the name of Marcus Jackson, to commit bank fraud by passing counterfeit checks drawn on Wachovia Bank. Stipulated facts, which we recount first, made up much of the evidence at trial.

Around January 2002 Mitchell, who was a legal alien, embarked on a scheme to defraud banks and retailers. Using a computer and check writing software, Mitchell printed counterfeit personal checks. The checks showed a targeted bank as drawee and listed Marcus Jackson as drawer. As an identification document Mitchell used a false Georgia driver's license featuring his own photograph but bearing the name Marcus Jackson. Using the counterfeit checks and the false identification, Mitchell would buy merchandise from a retailer at one store and return it for a cash refund at another store operated by the same retailer.

Mitchell pursued this scheme until October 4, 2005, when he was arrested by city police in Greenville, South Carolina, after passing counterfeit checks drawn on Wachovia Bank in the name of Marcus Jackson. Mitchell passed the checks at Marshall's, a local retail store, using as identification the false Georgia driver's license in the name of Marcus Jackson. When Mitchell was arrested, he had in his possession the false license and blank counterfeit checks, all in the name of Marcus Jackson. The driver's license number on the false license does not exist in the database of the Georgia Department of Driver Services. The department has, however, issued licenses in the name of Marcus Jackson.

The government introduced the false driver's license in the name of Marcus Jackson, 2446 New Hope Dr., East Point, GA, DOB: 10-19-77. Two additional government exhibits from the Georgia Department of Driver Services showed that valid driver's licenses had been issued to (1) Marcus Deyone Jackson, 2133 Stanton Rd., #B1, East Point, GA, DOB: 2-18-1977; and (2) Marcus Jackson, 100 Morrow Rd., Apt. B2, Forest Park, GA, DOB: 2-24-1976.

Mitchell, who was the only witness, testified in his own defense. He said that he did not know anyone named Marcus Jackson when he used the false driver's license and counterfeit checks in that name. According to Mitchell, he "just went in the phone book," because "when [he] couldn't think [of] a name," he "went and found [one]." J.A. 43. Mitchell further testified that he "ma[d]e up" the name Marcus Jackson. *Id.* This testimony, taken in the light most favorable to the government, is sufficient to establish that Mitchell got the name Marcus Jackson from a telephone book.

At the close of all the evidence Mitchell moved for a judgment of acquittal, arguing that the name Marcus Jackson was not sufficiently unique to identify a specific person. According to Mitchell, other identifiers were needed to identify a specific Marcus Jackson, and thus he did not use the means of identification of a specific person. The government argued that it only had to prove that a real person named Marcus Jackson existed, and the evidence showed there were at least two such persons. The district court agreed with the government, denied Mitchell's motion for acquittal, and found him guilty of aggravated identity theft.

The district court sentenced Mitchell to forty months in prison on the bank fraud count and a consecutive twenty-four months in prison on the aggravated identity theft count. Mitchell appeals only his conviction for aggravated identity theft.

## II.

The question in this appeal is whether Mitchell, while engaging in bank fraud, committed aggravated identity theft by using "a means of identification of another person." 18 U.S.C. § 1028A(a)(1). The answer turns on the meaning of the phrase "a means of identification of another person" and the sufficiency of the evidence. The meaning of the statute is a legal question that we review *de novo*. *United States v. Montejo*, 442 F.3d 213, 215 (4th Cir. 2006). In reviewing the sufficiency of the evidence, we must sustain a guilty verdict "if there is substantial evidence, taking the view most favorable to the Government, to support it." *Glasser v. United States*, 315 U.S. 60, 80 (1942). Substantial evidence "is evidence that a reasonable [trier] of fact could accept as adequate and sufficient to support a [finding of] a defendant's guilt beyond a reasonable doubt." *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (en banc).

## A.

The aggravated identity theft statute, 18 U.S.C. § 1028A, was enacted to "provide[ ] enhanced penalties for persons who steal identities to commit terrorist acts, immigration violations, firearms offenses, and other serious crimes." H.R. Rep. No. 108-528 at 3 (2004), 2004 U.S.C.C.A.N. at 779. An offense occurs under subsec-

tion (a)(1) of the statute when a person "during and in relation to any [enumerated] felony violation . . . knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person." 18 U.S.C. § 1028A(a)(1). The enumerated companion felonies include mail, bank, and wire fraud, acquisition of customer information by false pretenses, theft of public money or property, and violations relating to alien registration, immigration, and citizenship. *Id.* § 1028A(c). Conviction under § 1028A(a)(1) triggers a mandatory two-year prison term that must run consecutively to any other term imposed. *Id.* § 1028A(b).

In considering the meaning of § 1028A(a)(1)'s phrase "a means of identification of another person," our starting point is the language of the statute. When "the statute's language is plain, the sole function of the courts is to enforce it according to its terms," except in the rare case in which "the literal application . . . will produce a result demonstrably at odds with the intentions of its drafters." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241-42 (1989) (citations and internal quotation marks omitted). In assessing for plain meaning, "[w]e do not . . . [consider] statutory phrases in isolation; we read statutes as a whole." *United States v. Morton*, 467 U.S. 822, 828 (1984); *Ayes v. United States Dep't of Veterans Affairs*, 473 F.3d 104, 108 (4th Cir. 2006).

Here, the statute provides a definition that plainly clarifies the meaning of "a means of identification of another person." "Means of identification" is defined as

> any name or number that may be used, alone or in conjunction with any other information, to identify a *specific individual*, including any —
>
> (A)   name, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number;
>
> (B)   unique biometric data, such as fingerprint, voice print, retina or iris image, or other unique physical representation;

(C)   unique electronic identification number, address, or routing code; or

(D)   telecommunication identifying information or access device (as defined in section 1029(e)).

18 U.S.C. § 1028(d)(7) (emphasis added). The definition's overriding requirement is that a means of identification — that is, an identifier or identifiers — must be sufficient "to identify a specific individual." More particularly, the definition of a means of identification encompasses "any name or number that may be used, *alone or in conjunction with any other information*, to identify a specific individual." 18 U.S.C. § 1028(d)(7) (emphasis added). The definition, in other words, allows for an identifier, taken alone or together with other information, to qualify as a means of identification so long as the sum total of information identifies a specific individual. Many of the identifiers listed as examples in the definition, such as a social security number, an alien registration number, or a fingerprint, are unique and therefore sufficient alone to identify a specific individual. The definition, however, also lists non-unique identifiers that are not sufficient to identify a specific individual. A name alone, for example, would likely not be sufficiently unique to identify a specific individual because many persons have the same name. Likewise, a date of birth by itself would not be sufficient because multitudes of persons are born on the same day. When, however, a non-unique identifier is coupled with other information to identify a specific individual, "a means of identification of another person" is created.

When we examine § 1028A as a whole, we see that Congress distinguishes between a means of identification of a specific (or *actual*) person and a *false* identification document. Section 1028A also makes it a crime to use a false identification document in connection with a terrorism offense. 18 U.S.C. § 1028A(a)(2). A false identification document is "a document of a type commonly intended or commonly accepted for the purposes of identification of individuals" that (a) "is not issued by or under the authority of a governmental entity" or, if it was so issued, it "was subsequently altered for purposes of deceit" and (b) "appears to be issued by or under the authority" of a specified governmental or quasi-governmental entity or organization. 18 U.S.C.

§ 1028(d)(4).[1] This definition reveals that a false identification document may, but need not, include "a means of identification of another person" (a specific individual). Although a false identification document as defined by § 1028(d)(4) will include identifiers such as a name, *only* a false identification document that includes one or more identifiers sufficient to identify *a specific individual* may involve use of "a means of identification of another person" under the statute. The examination of § 1028A as a whole thus confirms that the distinguishing feature of a means of identification of another person is that it must identify a specific individual.

The statutory definition of "means of identification" gives plain meaning to the phrase "means of identification of another person." The phrase means simply a means of identification (an identifier or combination of identifiers) that may be used to identify a specific individual. This plain meaning is conclusive because it does not contravene Congress's intent to create a separate offense that provides enhanced penalties for persons who steal or use the identities of others to commit certain crimes.

B.

Mitchell argues that the district court erred when it held as a matter of law that the use of another person's name by itself constitutes the use of a means of identification of another person (a specific individual) under § 1028A. Mitchell is correct. As we have said, a bare name may not be sufficiently unique — indeed, it is not likely to be sufficiently unique — to identify a specific person. That is the case here, as the undisputed evidence confirms. Two persons named Marcus Jackson have a driver's license issued by the Georgia Department of Driver Services. The false Georgia driver's license used by Mitchell bore the name Marcus Jackson, but that name used alone did not identify one of the real Marcus Jacksons. In other words, the name alone was not sufficient to identify a specific Marcus Jackson, as required by the statute.

---

[1]The false Georgia driver's license used by Mitchell meets the definition of a false identification document. Mitchell, however, was not charged with a crime that has as an element the use of a false identification document.

The government argues that we may still affirm the guilty verdict because other identifiers in the false driver's license were sufficient, in conjunction with the name Marcus Jackson, to identify the real Marcus Jackson who lived in East Point, Georgia. This argument centers on whether the evidence is sufficient to permit a finding that Mitchell, in presenting the false driver's license as identification to pass counterfeit checks at the retail store, used a means of identification of a specific Marcus Jackson. The government relies on three non-unique identifiers on the false license, first and last name, city of residence, and year of birth, that match identifiers on the license of Marcus Deyone Jackson. An examination of the two documents, however, reveals substantial differences in the more specific details of the non-unique identifiers. To begin with, the names were not exactly the same. The false license bore the name Marcus Jackson, but the real license bore the name Marcus Deyone Jackson. Both licenses listed East Point, Georgia, as the city of residence. The false license, however, did not have anything close to the correct street name and address of the real Marcus Deyone Jackson. The false license had the same year of birth as that of Marcus Deyone Jackson, but the month and day of birth did not match. In addition, the driver's license numbers on the two documents did not match, and the false license had a number that had never been issued by the Georgia Department of Driver Services. In other words, the one unique identifier on the false license, the license number, was wholly fictional.[2]

In sum, there was no (valid) unique identifier on the false license that could be used by itself to identify Marcus Deyone Jackson. Moreover, the many particulars of the non-unique identifiers, the particulars of name, address, and date of birth, were a hopeless muddle of non-matching and matching information. The non-matching identifi-

---

[2]A unique identifier belonging to a real person, such as a government-issued driver's license number, identifies "a specific individual" for purposes of § 1028A(a)(1). *See* 18 U.S.C. § 1028(d)(7)(A)-(D); *United States v. Montejo*, 442 F.3d at 214 (stating, in affirming a conviction for aggravated identity theft, that social security numbers and alien registration numbers are unique identifiers); *see also United States v. Melendrez*, 389 F.3d 829, 834 (9th Cir. 2004) (explaining, in applying U.S.S.G. § 2B1.1(b)(9)(C) (2002), that a real social security number identifies a specific individual, even when paired with an incorrect name).

ers (middle name treatment, street name and address, and month and date of birth) were much more specific. The matching identifiers (first and last name only, city of residence, and year of birth) were too general to identify a specific person in the circumstances here. The false driver's license that Mitchell tendered simply could not be used to identify a specific Marcus Deyone Jackson. Accordingly, the evidence does not establish that Mitchell used a means of identification of another person when he presented the false license at the retail store. More to the point, a reasonable trier of fact could not conclude that the evidence was sufficient to find Mitchell guilty of aggravated identity theft beyond a reasonable doubt. His conviction under 18 U.S.C. § 1028A(a)(1) (count III) is therefore

*REVERSED*.